UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ROSARIO SCIBILIA,

                Plaintiff,                        **MEMORANDUM AND ORDER**
                                                                       08-CV-4201 (RRM)(VVP)
    - against -

VERIZON COMMUNICATIONS, INC., AND
EMPIRE CITY SUBWAY COMPANY
(LIMITED),

                Defendants.
-----------------------------------------------------------X

**MAUSKOPF, United States District Judge.**

      Plaintiff Rosario Scibilia brings this action against Defendants Verizon Communications, Inc., and Empire City Subway Company, Ltd., a subsidiary of Verizon Communications (collectively, "Verizon" or "Defendants"), seeking compensation for overtime and night hours, punitive damages, and injunctive relief. (Notice of Removal ("Compl.") (Doc. No. 1) ¶¶ I–VI.)[1] Defendants have moved for summary judgment on all claims (Defs.' Mot. for Summ. J. (Doc. No. 24) 1.) Both parties also seek sanctions under Rule 11. (Doc. Nos. 37 and 42.)

      As explained in greater detail below, Plaintiff's claims are based on alleged violations of a collective bargaining agreement. Breach of the duty of fair representation is a necessary element of Plaintiff's claims. However Plaintiff has failed to raise a genuine issue of material fact concerning any such breach. Therefore, Defendants' motion is granted, and Plaintiff's claim is dismissed in its entirety. In addition, in the exercise of its discretion, the Court will not impose sanctions on any party.

---

[1] Plaintiff's Complaint is attached to Defendants' Notice of Removal from state court (Doc. No. 1.) According to the automatic page numbers assigned by ECF, Plaintiff's Complaint begins on page 4 of the Notice of Removal. Paragraph references correspond to numbered paragraphs beginning on page 5.

**BACKGROUND**

The following facts are drawn from (i) Plaintiff's Complaint, (ii) the parties' Local Rule 56.1 statements and the exhibits annexed thereto, and (iii) declarations, affidavits, and exhibits submitted in support of and opposition to Defendants' motion for summary judgment. The facts are either undisputed or set forth in the light most favorable to Plaintiff.

At all relevant times, Plaintiff was employed as a construction equipment operator with Empire City, a company specializing in subsurface engineering and construction services. (Defs.' Rule 56.1 Statement (Doc. No. 28) ¶¶ 1–2.) Plaintiff was a member of the Communication Workers of America Union (the "Union"). (*Id.* at ¶ 3.) Verizon and the Union were parties to a collective bargaining agreement (the "CBA"). (*Id.* at ¶ 4.) The CBA and the local work rules of the Defendants govern the terms and conditions of Plaintiff's employment. (*Id.*; Compl. ¶ 2.) The Union is the sole and exclusive representative of Plaintiff under the CBA. (Defs.' Rule 56.1 Stmt. ¶6.)

On March 26, 2007, Plaintiff sent two "Statement of Occurrence" forms to the Union. (Compl. 13 (annexed form NLRB-508).) The Union provides these forms, and employees submit them to initiate grievance procedures under the CBA. (*See* Pl.'s Aff. in Opp'n to Defs.' Mot. for Summ. J. (Doc. No. 30) ¶¶ 8–9.) On one form, Plaintiff complained of his rotation off the night shift against his wishes and without proper notice, in violation of the CBA. (Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. (Doc. No. 31) Ex. A, at 4.) On the other form, Plaintiff complained that Empire City incorrectly charged him with overtime between March 2004 and March 2007, thereby incorrectly reduced his eligibility for overtime under the CBA during that period. (*Id.* at 5–6.)

On May 18, 2007, after a telephone conversation between Plaintiff and a Union representative, Plaintiff faxed to the Union copies of the Statements he had sent in March 2007. (Compl. 13 (annexed form NLRB-508).) On July 17, 2007, believing that the Union had ignored his grievances, Plaintiff filed a "charge" of Union non-responsiveness with the National Labor Relations Board (NLRB), which charge his attorney supplemented with a letter. (*Id.*; Pl.'s Mem. in Opp'n, Exs. F–G.) A "charge" is a formal allegation that an unfair labor practice has occurred or is occurring, and initiates a review of the allegation by the NLRB. *See* Golder et al., Labor and Employment Law: Compliance and Litigation § 2:6 (3d ed. 2010).

Around July 30, 2007, the NLRB asked the Union about Plaintiff's complaints. On July 30, 2007, Chief Union Steward Richard Meltz responded by facsimile that Plaintiff's two grievances were "sat" on June 7, 2007. (Reply in Supp. of Defs.' Mot. for Summ. J., Martin W. Aron's Aff. ("Aron Aff.") (Doc. No. 35) Ex. A, at 2.) To "sit" a grievance means to review the complaint informally with a management spokesperson. (Pl.'s Mem. in Opp'n Ex. D, at 2 (CBA Article 11.02).) Meltz reported that the grievances had been denied, but would be taken to the "second step," that is, appealed between higher-level Verizon and Union officials. (Aron Aff. Ex. A, at 2; Pl.'s Mem. in Opp'n Ex. D, at 2.) On September 25, 2007, Plaintiff was denied relief at that second step, and the Union decided not to take any further action regarding the grievances. (Aron Aff. Ex. B, at 2.) On September 28, 2007, Meltz reported the outcome of the appeals to the NLRB, and undertook to report the outcome to Plaintiff. (*Id.*)

On October 1, 2007, at Plaintiff's request, the NLRB agreed to withdraw Plaintiff's charge that the Union never presented his grievance, contingent on the Union notifying him of any determinations reached. (Aron Aff. Ex. C, at 2.) On October 30, 2007, Plaintiff's counsel acknowledged in a letter to Verizon that Plaintiff was "told by his union rep that the second step

3

[of his grievances] got nowhere." (Reply in Supp. of Defs.' Mot. for Summ. J., Anthony Errico's Aff. ("Errico Aff. II") (Doc. No. 36) Ex. A, at 2, Feb. 22, 2010.)

On June 9, 2008, the Union presented two more grievances to Verizon on behalf of Plaintiff. One claim was identical to Plaintiff's 2007 night shift rotation grievance. (Defs.' Rule 56.1 Stmt. ¶ 50.) The second claim differed from Plaintiff's 2007 "overtime" grievance, this time alleging that Verizon improperly charged overtime during Plaintiff's extended absence from November 4, 2007 through March 3, 2008. (Defs.' Rule 56.1 Stmt. ¶¶ 23–24.) On June 20, 2008, the Union and Verizon mutually resolved both grievances at the first step of the grievance process. (Defs.' Rule 56.1 Stmt. ¶¶ 25, 52; *see* Aff. in Supp. of Defs.' Mot. for Summ. J., Anthony Errico's Aff. ("Errico Aff. I") (Doc. No. 26) Exs. E, H, Dec. 21, 2009.) Plaintiff again was denied relief. (*See* Errico Aff. I Exs. E, H.)

Plaintiff initially filed this action in New York Supreme Court, Queens County, on September 15, 2008. On October 15, 2008, Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. (Compl. 2.) Though styled as a breach of contract, all of Plaintiff's claims allege violations of the CBA between the Union and Verizon. Therefore, Section 301 of the federal Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and federal common law govern this action, New York contract law is completely preempted, and this Court has original jurisdiction under 28 U.S.C. § 1331. *See Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35, 38 (2d Cir. 1997) ("Under [S]ection 301, state law based claims for '[s]uits for violation of contracts between an employer and a labor organization' are completely preempted, and if such a suit is filed in state court, it can be removed to federal court.") (alteration in original) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)).

**STANDARD OF REVIEW**

Summary judgment is appropriate when the record, including pleadings, depositions, interrogatories, admissions, affidavits, and exhibits, demonstrates that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *see also Brosseau v. Haugen*, 543 U.S. 194, 195 n.1 (2004). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*,' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998) (citing cases). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted) (alteration in

original).  Thus, "[a]defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case."  *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir.1996) (citing *Anderson*, 477 U.S. at 247–48).

## DISCUSSION

Plaintiff seeks a judicial interpretation of the CBA declaring that Verizon violated Plaintiff's rights when it rotated Plaintiff off the night shift, and charged him with overtime.  (*See* Compl. ¶ I–II, IV.)  A strong federal interest, however, protects the rights of employers and unions to reach private consensus on the proper interpretation of collective bargaining agreements, without judicial interference.  *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 702 (1966).  Courts will uphold the results of employer-union grievance resolutions, unless a plaintiff can establish that the union failed fairly to represent him in the resolution process.  *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983).  Generally, a plaintiff who fails to show a breach of the duty of fair representation lacks standing to seek judicial interpretation of a collective bargaining agreement.  *See, e.g.*, *id.*; *Katir v. Columbia Univ.*, 15 F.3d 23, 24 (2d Cir. 1994).  Here, as discussed more fully below, Plaintiff has "fail[ed] to make a showing sufficient to establish" that the Union breached its duty of fair representation.  *Celotex*, 477 U.S. at 322.

### I.     Duty of Fair Representation

Section 301 of the LMRA governs "[s]uits for violation of contracts between an employer and a labor organization."  29 U.S.C. § 185(a) (2006).  Generally, " 'the Union ha[s] a statutory duty fairly to represent all of [its] employees . . . in its enforcement of the . . . collective bargaining agreement.' "  *United Steelworkers v. Rawson*, 495 U.S. 362, 372 (1990) (quoting

6

*Vaca v. Sipes*, 386 U.S. 171, 177 (1967)); *see DelCostello*, 462 U.S. at 164. An employee has standing to sue an employer to challenge the interpretation of a collective bargaining agreement only if the employee shows that the union breached its duty fairly to represent him in the agreement's grievance and arbitration procedures. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562–63 (1976); *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989); *Lapir v. Maimonides Med. Ctr.*, 750 F. Supp. 1171, 1176–77 (E.D.N.Y. 1990); *see Young v. U.S. Postal Serv.*, 907 F.2d 305, 307 (2d Cir. 1990) (union's breach of the duty of fair representation "a prerequisite to consideration of the merits of plaintiff's claim against her former employer."). When a union has represented its employee fairly under the dispute-resolution mechanisms of the CBA, courts "defer to the tribunal chosen by the parties finally to settle their disputes," and do not undertake a plenary review of the merits of the dispute. *Hines*, 424 U.S. at 563.

To establish a breach of the duty of fair representation, a plaintiff must show that the union's conduct was "arbitrary, discriminatory or in bad faith . . . and . . . seriously undermine[d] the arbitral process." *Barr*, 868 F.2d at 43 (internal quotation marks omitted). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Sanozky v. Int'l Ass'n of Machinists*, 415 F.3d 279, 282–83 (2d Cir. 2005) (internal quotation marks omitted). The duty of fair representation is not breached where the union fails to process a meritless grievance, fails to process a grievance due to error in evaluating the merits of the grievance, or engages in mere negligent conduct. *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1154 (2d Cir. 1994). Although a union may not arbitrarily ignore a meritorious grievance or process a grievance in a perfunctory manner, a union member has no

7

absolute right to have his grievance taken to arbitration. *Vaca*, 386 U.S. at 191; *Lapir*, 750 F. Supp. at 1177.

An employee who cannot establish a breach of the duty of fair representation in the ways described above still may challenge his employer's interpretation of the collective bargaining agreement in court if the agreement does not make its dispute-resolution procedures the exclusive remedy, or if the employer's conduct amounts a repudiation of those procedures. *Vaca*, 386 U.S. at 184 n.9, 185. Otherwise, the employee is required exclusively to use the dispute resolution mechanisms provided in the collective bargaining agreement, and courts will not disturb the outcome of disputes resolved under the agreement. *Hines*, 424 U.S. at 563; *Barr*, 868 F.2d at 43.

## II. Application

The uncontroverted facts fail to establish a breach of the duty of fair representation by the Union. Plaintiff complained twice to his Union in 2007. He asserts that the Union failed fairly to represent him because only one of these complaints was presented as a grievance to Verizon. (Pl.'s Mem. in Opp'n 1–2.) However, Plaintiff's allegation is wholly unsupported and, in fact, contradicted by both NLRB and Union communications indicating not only that the Union presented Plaintiff's initial complaints to Verizon, but also appealed them. (Aron Aff. Exs. A–B.) A letter from Plaintiff's attorney to Verizon following the NLRB charge provides further compelling evidence that Plaintiff knew that each of his initial complaints had reached the second step of the grievance process, and "got[ten] nowhere." (Errico Aff. II Ex. A, at 2.) The record also clearly shows that the Union and Defendants "sat" Plaintiff's 2008 complaints independently from the 2007 complaints. (*See* Aron Aff. Ex. A, at 2; Errico Aff. I Exs. E, H.)

The Union, therefore, did not ignore Plaintiff's complaints, and did not breach its duty of fair representation in this respect. *See Lapir*, 750 F. Supp. at 1177.

Plaintiff has also failed to raise a triable issue of material fact as to whether the Union's actions otherwise were "arbitrary, discriminatory or in bad faith," or "undermined the arbitral process." *Sanozky*, 415 F.3d at 282–83 (internal quotation marks omitted). Plaintiff alleges that the lack of detail in the Union's reported resolution of his complaints renders him unable to "proceed further under the grievance procedure outlined in the union contract." (Compl. ¶ 4.) Absent an explicit provision in the CBA, however, an employee has no absolute right to have his grievance taken to arbitration. *Vaca*, 386 U.S. at 191; *Lapir*, 750 F. Supp. at 1177. Plaintiff has not shown any such provision. Indeed, the Union has the discretion to pursue a complaint through final arbitration (Pl.'s Mem. in Opp'n Exs. D–E (CBA Articles 11 and 12)), and the Court will uphold its discretion if exercised within a "wide range of reasonableness." *Sanozky*, 415 F.3d at 282. None of Plaintiff's submissions raise an issue of fact as to whether the Union or Verizon processed Plaintiff's complaints arbitrarily or in a perfunctory manner, and, as discussed above, Defendants' unrefuted submissions establish otherwise. (*See, e.g.*, Errico Aff. I Exs. E, H.) The uncontroverted record clearly shows that the Union's conduct was well within the range of reasonableness accorded to the Union under the CBA and law, and as a result, the Union has satisfied its duty of fair representation. Therefore, and the Court will not "intercede on behalf of" Plaintiff, although he "may be prejudiced by rationally founded decisions which operate to [his] particular disadvantage." *Barr*, 868 F.2d at 43–44 (internal quotations omitted).

The CBA makes its dispute-resolution procedures the exclusive remedy for an employee grievance. (*See* Pl.'s Mem. in Opp'n Ex. D, at 2 (CBA Article 11.01).) Plaintiff has not provided evidence of conduct by Verizon amounting to a refusal to abide by the grievance and

arbitration procedures, or some other repudiation. *See Vaca*, 386 U.S. at 185. Therefore, because Plaintiff also has not provided evidence from which to conclude that his Union failed fairly to represent him in those procedures, this Court will not consider Plaintiff's interpretation of the CBA or disturb the results of the Verizon-Union grievance proceedings, which twice found that Plaintiff's complaints lacked merit. *See Barr*, 868 F.2d at 43; *Smith v. Drug, Chem., Cosmetic, Plastics and Affiliated Indus. Warehouse Emps.*, 943 F. Supp. 224, 236–37, 242 (E.D.N.Y. 1996).

### III. Sanctions

Both parties seek sanctions (Doc. Nos. 37 and 42). The Court, in its discretion, DENIES the parties' motions for Rule 11 sanctions, finding that the parties had "some arguable basis" for their representations to the Court, the conduct of the litigation and, in Plaintiff's case, the bringing of this claim. *Perez v. Posse Comitatus*, 373 F.3d 321, 326 (2d Cir. 2004); *see* Defs.' Mot. for Sanctions (Doc. No. 37) 1; Pl.'s Mot. for Sanctions (Doc. No. 42) 2–3.

### CONCLUSION

For the reasons above, Verizon's Motion for Summary Judgment (Doc. No. 24) is GRANTED, and Plaintiff's Complaint is DISMISSED in its entirety. In addition, the Court DENIES the parties' requests for sanctions under Rule 11 (Doc. Nos. 37 and 42). The Clerk of Court is directed to enter judgment accordingly, and to close the case.

SO ORDERED.

/S/

Dated: Brooklyn, New York
March 29, 2011

ROSLYNN R. MAUSKOPF
United States District Judge